| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. FREDERIC P. ZOTOS, and, | |
| COMMONWEALTH OF MASSACHUSETTS, ex rel. FREDERIC P. ZOTOS, | CIVIL ACTION NO. 1:19-CV-12002-NMG |
| Plaintiffs, | |
| v. | |
| TOWN OF HINGHAM, Massachusetts, | |
| ROGER FERNANDEZ, individually and as former Town Engineer, Town of Hingham, | |
| TOM MAYO, individually, and as Town Administrator, Town of Hingham, | |
| TED C. ALEXIADES, individually, and as former Town Administrator, former Town Accountant/Finance Director, Town of Hingham, | |
| KEVIN PAICOS, individually, and as former Town Administrator, Town of Hingham, | |
| SUSAN NICKERSON, individually, and as Town Accountant, Town of Hingham, | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS

Defendants the Town of Hingham, Roger Fernandez, Tom Mayo, Ted C. Alexiades, Kevin Paicos, and Susan Nickerson (collectively, the "Defendants"), jointly submit this memorandum in support of their Motion to Dismiss claims against them pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

# INTRODUCTION

Plaintiff Frederic P. Zotos' instant Complaint is his fifth attempt at a civil action[1] to challenge the lawfulness of the speed signs in the Town of Hingham, despite having the state and federal courts rule against him on each of the prior cases. In this most recent Complaint, he does so by claiming the Defendants submitted false claims specifically because they signed certifications for reimbursement on state and federal Chapter 90 reimbursement contracts allegedly knowing the speed signs were posted out of compliance with the law. He makes this claim despite the fact that his extensive prior litigation on the subject matter indicates to the complete contrary, that the defendants were in compliance with the law. The results of the prior cases also serve to show that the defendants did not knowingly submit false claims, as Plaintiff is claiming, because this Court and the Massachusetts Trial and Appeals Courts have all opined that the Defendants acted lawfully and not *ultra vires*[2] with regard to the posting of speed signs in the Town of Hingham.

Plaintiff first brought his claims in the United States District Court for the District of Massachusetts in the matter of *Zotos v. Town of Hingham,* et al., 1:12-cv-11126 in July of 2012[3] (hereinafter referred to as "Zotos I"). (Zotos Complaint, July 9, 2012; Attached as Exhibit A).

---

[1] Plaintiff also prosecuted a Chapter 90 civil motor vehicle infraction appeal all the way up to the Supreme Judicial Court wherein he made the same unlawfulness arguments he makes here. Each court reviewing Plaintiff's CMVI's appeal rejected his arguments to unlawfulness in the posting of the speed signs.

[2] This brief utilizes the phrase "*ultra vires*" throughout as a means of describing Plaintiff's core claim that the speed signs in the Town of Hingham were posted unlawfully, in violation of Chapter 90, Chapter 85, the 2009 Manual on Uniform Traffic Control Devices, the Massachusetts Amendments to the 2009 Manual on Uniform Traffic Control Devices, or any other claimed violation made by the Plaintiff in the current or prior complaints.

[3] July 9, 2012 is the latest arguable date from which the statute of limitations commenced, addressed fully below. Plaintiff also alleges that on July 12, 2012, he sent a letter to Richard M. Davey, Secretary of Transportation and Chief Executive Officer, MassDOT entitled "Regulatory Investigation and Enforcement Request" in which he alleged that the speed signs in the Town of Hingham were posted *ultra vires*. (Compl. at ¶ 127). His request was denied on July 13, 2012 by Rachel Rollins, then General Counsel of MassDOT. (Compl. at ¶ 128). Further, Plaintiff cites G.L. c. 85, § 2 on page 10 of his Complaint and alleges that MassDOT shall withhold or withdraw the unexpended balance of any funds assigned to the Town under the provisions of section thirty-four of chapter ninety. (Compl. at ¶ 26). Not only did this Court and the Massachusetts Trial and Appeals Courts reject Plaintiff's claims, so did MassDOT, and Chapter 90 funds were not withheld or withdrawn despite Plaintiff's repeat letters to MassDOT.

There the federal district court addressed the sufficiency of Mr. Zotos' pleadings and in a thorough and well-reasoned decision determined that none of the claims could withstand a Rule 12(b)(6) motion to dismiss. (Zotos Decision, September 19, 2013; Attached as Exhibit B). Mr. Zotos appealed to the United States Court of Appeals for the First Circuit and the First Circuit affirmed the dismissal. (First Circuit Decision, February 18, 2015; Attached as Exhibit C).

During the pendency of the Zotos I appeal to the Court of Appeals, Plaintiff filed a nearly identical Complaint with this Court thereby commencing a second matter ("Zotos II") premised upon different theories of law. The facts upon which Zotos II is based are the same core facts upon which Zotos I was based. (Zotos Amended Complaint, August 3, 2015; Attached as Exhibit D). In a second thorough and well-reasoned decision, this Court determined that none of the claims could withstand a Rule 12(b)(6) motion to dismiss. (Zotos II Decision, March 25, 2016; Attached as Exhibit E). Importantly, in the second decision, Judge Casper ruled:

> In Counts XII, XIII, XIV and XV, Zotos adds ultra vires claims. D. 18 ¶¶ 152-163. Zotos alleges that Defendants acted ultra vires because Defendants erected and enforced special speeding regulations pursuant to Mass. Gen. L. c. 90, § 18 without complying with section 18's requirements. Id. An officer "may be said to act ultra vires only when he acts without any authority whatever." New Hampshire Ins. Guar. Ass'n v. Markem Corp., 424 Mass. 344, 353 (1997) (internal quotation marks omitted) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 n.11 (1984)); cf. Entergy Nuclear Generation Co. v. Dep't of Envtl. Prot., 459 Mass. 319, 332 (2011) (explaining that agency's actions were not ultra vires because the authority to take those actions was implied by the governing statute). Only a procedure that has "no authority" in the relevant statutes, considering both the authority expressly and impliedly granted, is ultra vires. Morey v. Martha's Vineyard Comm'n, 409 Mass. 813, 818 (1991). Thus, for this claim to survive, Zotos must plausibly allege that Defendants' conduct was without any authority whatever. Mass. Gen. L. c. 90, § 17 and 18 both pertain to motor vehicle speed limits. Pursuant to section 17, "[n]o person operating a motor vehicle on any way shall run it at a rate of speed greater than is reasonable and proper." Furthermore, "[u]nless a way is otherwise posted in accordance with the provisions of section eighteen, it shall be prima facie evidence of a rate of speed greater than is reasonable and proper... if a motor vehicle is operated... inside a thickly settled or business district at a rate of speed exceeding thirty miles per hour." Mass. Gen. L. c. 90, § 17. Sections

17 and 18 must be read harmoniously." Police Dep't of Hingham, 81 Mass. App. Ct. at *1. Accordingly, section 18 "permits the imposition of a different speed limit so long as certain procedures are followed." Id. In other words, "Section 17 sets forth the basic law [while] section 18 allows modifications to it. Id. Even "if a speed limit is posted in violation of [section] 18, [section] 17 controls." Id.

Zotos concedes that he received his speeding citations for violating speed limits of thirty miles per hour. D. 18-4; D. 18-9; D. 18-15. As the Appeals Court of Massachusetts concluded and Zotos has not disputed, "it appears that [Zotos] was traveling in an area identified as a 'thickly settled area,' in which [section 17] limits speeds to thirty miles per hour. Police Dept of Hingham, 81 Mass. App. Ct. at *2. Consequently, even if Defendants did not satisfy the requirements of section 18, Defendants' conduct was not ultra vires because authority to post and enforce "a reasonable and proper" speed limit is granted by section 17.

Without pointing to any supportive authority, Zotos argues that, because the speed limits at issue were posted, they must be treated as special speed limits pursuant to section 18. D. 21 at 17. In Zotos' view, "'general speed regulations' set forth by [section § 17] are all unposted speed limits." Id. The Court finds no language in section 17 that automatically places a speed limit outside of section 17's purview and renders it subject to section 18's special requirements merely because a public sign has been posted. To the contrary, in section 17 the language "[u]nless a way is otherwise posted in accordance with the provisions of section eighteen," particularly the use of "otherwise," indicates that section 18 is not the exclusive authority for posted speed limits. Mass. Gen. L. c. 90, § 17. Moreover, the fact that the citations may have listed section 18 is not determinative because "[Zotos] suffered no prejudice" given that "[r]egardless of the section checked, whether § 17 or § 18, the Commonwealth had the same burden of proof, to wit, proving operation of the car in excess of that which was reasonable and proper." Police Dep't of Hingham, 81 Mass. App. Ct. at *2. Because Zotos has failed to present a plausible basis upon which to conclude that the speed limits signs at issue were outside of the reach of section 17 and its "reasonable and proper" standard, Zotos has failed to allege that Defendants' conduct was ultra vires. Therefore the ultra vires claims fail.

(Zotos II Decision, March 25, 2016; Attached as Exhibit E).

While Zotos II was pending, this time on behalf of a client, Plaintiff filed another substantially identical action challenging the lawfulness of the speed signs in the Town of Hingham in Plymouth Superior Court (hereinafter referred to as "Belezos I"). (See Belezos v. Town of

<u>Hingham</u> Amended Complaint; Attached as Exhibit F).  Deciding a motion for judgment on the pleadings, Superior Court Judge Christopher Muse found the following:

> Defendants correctly argue that the claims raised in the First Amended Complaint are substantially those raised by Plaintiffs Attorney Frederic Zotos, in a personal action he previously filed in the U. S. District Court , and citing to the well reasoned opinion of the District Court Judge, urges this court to dismiss their complaints for the same reasons. Defendants presented a chart of the comparable Zotos complaints, (Zotos I and Zotos II) to establish the identity of those claims for purposes of comparison to Belozo's claims. The court attaches this chart and notes that only Count XVI (conversion) is a claim separate from the Zotos' federal actions.

> Now, to the issue that Attorney Zotos raised on his own behalf from the moment of receiving a speeding ticket from a Hingham police officer on Gardner street on December 2, 2010.

> Zotos challenged the authority of the Town of Hingham to post the 30 mph sign, and the right of the officer to cite him for its violation. His journey of vindication took him first to the Hingham District court before a clerk magistrate, then to judge of that court, followed by an appeal to the Appellate Division of the District Court, then again to the Massachusetts Court of Appeals, followed by an action before a Magistrate of the Federal District court, a subsequent appeal to the First Circuit Court of Appeals, and finally, before a judge of the Federal Court. In each instance the court proceeding was resolved against Zotos and in favor of the Town.

> **The core issue raised again by Zotos, now on behalf of Belezos, is: Did Hingham have the right to install that sign, and did the Hingham police have the authority to enforce a speed limit on Gardner St? For the benefit of Belezos and for posterity, the court shall echo the historic findings made earlier against Zotos, and now states without equivocation, "Yes, they did."[4]**

>> G. L. c. 90 § 17 states as follows:

>> " ... If a speed limit has been duly established upon any way, in accordance with the provisions of said section, operation of a motor vehicle at a rate of speed in excess of such limit shall be prima facie evidence that such speed is greater than is reasonable and proper ... ".

> A reading of the statute clearly authorizes a municipality to establish zones in which certain speeds have been deemed reasonable by the Legislature. The provisions of said section noted above, identify several speed restrictions based on the density of the population near

---

[4] Emphasis added.

the roadways. For example, and applicable to this case, "inside a thickly settled or business district" a sign of thirty miles per hour may be posted.

Federal District Court Judge Casper reviewed this statute and found against Zotos as follows:

> The Court finds no language in section 17 that automatically places a speed limit outside of section 17's purview and renders it subject to section 18's special requirements merely because a public sign has been posted. To the contrary, in section 17 the language "[ u ]nless a way is otherwise posted in accordance with the provisions of section eighteen," particularly the use of "otherwise," indicates that section 18 is not the exclusive authority for posted speed limits. Mass. Gen. L. c. 90, § 17. Moreover, the fact that the citations may have listed section 18 is not determinative because "[Zotos] suffered no prejudice" given that "[r]egardless of the section checked, whether § 17 or § 18, the Commonwealth had the same burden of proof, to wit, proving operation of the car in excess of that which was reasonable and proper." Police Dep't of Hingham, 81 Mass. App. Ct. at *2. Because Zotos has failed to present a plausible basis upon which to conclude that the speed limits signs at issue were outside of the reach of section 17 and its "reasonable and proper" standard, Zotos has failed to allege that Defendants' conduct was ultra vires. Therefore the ultra vires claims fail.

**Independent of this decision, but giving persuasive effect to her well reasoned holding, this court adopts Judge Casper's finding, and concludes, once again that Hingham had the statutory right to install that sign, and the Hingham police had the authority to enforce its designated speed limits.[5]**

(See Belezos v. Town of Hingham MJOP Decision; Attached as Exhibit G).  The Massachusetts Appeals Court affirmed the Judgment.  (Belezos v. Town of Hingham MAC Decision; Attached as Exhibit H).

Following the Appeals Court's decision affirming the Plymouth County Superior Court's Judgment, again on behalf of his client Nicholas G. Belezos, the Plaintiff filed yet another substantially identical action challenging the lawfulness of the posted speed limit signs, in this Court. (See Belezos v. Board of Selectmen, 1:17-cv-12570-FDS Amended Complaint; Attached as Exhibit

---

[5] Emphasis added.

I)("Belezos II").  Magistrate Judge Marianne Bowler dismissed <u>Belezos II</u> and in doing so stated the following:

> Here, as repeatedly and consistently reiterated by defendants, plaintiff's state court litigation regarding the speed limit sign on Gardner Street compelled them to defend against the hard-fought litigation that plaintiff pursued in the state trial court, the MAC, and the SJC. (Docket Entry ## 8-7, 8-8, 8-9, 15-1, 25-4). The merits of the litigation did not favor plaintiff in light of his counsel's repeatedly-unsuccessful attempts in state and federal court to obtain relief related to his own speeding ticket on Gardner Street. (Docket Entry ## 8-1 to 8-5, 25-3). Claim preclusion will relieve the further cost and vexation to defendants of extending this already extensively litigated matter and conserve additional judicial resources devoted to this case at the expense of other cases. In addition, federalism and comity caution against a federal court interfering and essentially overlooking or overturning a state court decision (Docket Entry # 8-8) that applies a state statute to bar plaintiff from further challenges in this matter because he failed to avail himself of the opportunities initially provided in chapter 90C. Allowing the claims in this case, which comprise substantially the same claims against the same defendants that the MAC precluded in Belezos (Docket Entry ## 8-8, 11, 15-1), to go forward goes directly against the premise of the MAC's decision, which the MAC considered final. (Docket Entry # 8-8, p. 4) (quoting chapter 90C, section three, that payment of assessment "'shall operate as a final disposition'") (emphasis added).

> …

> The MAC's decision [in <u>Belezos I</u>] therefore deemed the assertions or claims regarding the erection and enforcement of the unauthorized speed limit signs encompassed within the waiver. Furthermore, the MAC affirmed the judgment of the trial court, which dismissed the state statutory claims as well as the federal constitutional claims. If the MAC passed over the erection and illegal enforcement of the speed limit signage assertions, as plaintiff suggests, the MAC would not have affirmed the judgment dismissing all of the claims. Simply put, the MAC did not pass over them.

> In any event, the trial court considered the issues regarding the unauthorized speed limit signs and made necessary findings regarding them to support the final judgment. As previously explained, the trial court did not render alternative findings and the MAC did not affirm the judgment based on one of two alternative grounds. (Docket Entry # 22, p. 28).

(<u>See</u> <u>Belezos v. Board of Selectmen</u>, 1:17-cv-12570-MBB Decision; Attached as Exhibit J).

Now, through the instant matter (hereinafter referred to as <u>Zotos III</u>), the Plaintiff makes a *fifth* attempt to challenge the lawfulness of the posted speed signs, this time presuming the unlawfulness of the postings despite all of the applicable prior litigation to the contrary and grafting

that presumed unlawfulness upon three alleged violations of the Federal False Claims Act and three alleged violations of the Massachusetts False Claims Act. (Compl. at ¶¶ 131-160).

Plaintiff's instant allegations, simplified, are that the Town and various officials of the Town have filled out or signed forms (i.e. Form PR-20 voucher, see Compl. at ¶ 35; Chapter 90 Reimbursements, see Compl. at ¶¶ 44, 48-74) or executed contracts which precipitate vouchers for payments for construction projects (i.e. MassDOT Standard Contract Form, see Compl. at ¶¶ 43-47) and that such action was fraudulent not because the work for which the voucher was submitted was not completed but because Zotos is once again alleging that the Town's signs were not properly posted in accordance with the laws cited within his Complaint.

Specifically, Plaintiff alleges that such action was "fraudulent" because the standard Chapter 90 Request Reimbursement forms that are submitted require a certification that states as follows:

a. The Municipal Highway Officer's Certification is as follows:

I hereby certify under the penalty of perjury, that the charges for labor, materials, equipment, and services itemized and summarized on the attached forms are true and correct, and were incurred on this project in conformance with the Massachusetts Highway Department [a.k.a. MassDOT Highway Division (2010)] Policies and established Municipal Standards that were approved for this project.

b. The Accounting Officer's and Duly Authorized Municipal Official's Certification is as follows:

I/W e under penalty of perjury that the forms as listed or summarized on the attached forms were examined; that they are in conformity with our existing wage schedule, equipment rates, and all applicable statutes and regulations; that they are properly chargeable to the appropriation(s) designated for this work; and that Executive Order No. 195, dated April 27, 1981 [and Chapter 11, Section 12 (2012)], is acknowledged as applicable.

(Compl. at ¶¶ 48-49).

Thus, according to Plaintiff's theory of the case, when Chapter 90 Reimbursement Requests were submitted between November 23, 2009 and July 2, 2018, the Defendants were defrauding the State and Federal governments of funds. (Compl. at ¶¶ 50-88).

Plaintiff does not make any allegations in his Complaint that the work for which the Town Defendants submitted Chapter 90 Reimbursement Requests and were reimbursed was not actually performed or completed. (Compl. *et seq.*). Rather, Plaintiff claims that the Defendants have engaged in a violation of the Federal and the Massachusetts False Claims Act because the speed signs located on certain roadways[6] were posted unlawfully, according to his reading of the law, repeating the same core claim that he made previously which was flatly rejected in <u>Zotos I</u>, <u>Zotos II</u>, <u>Belezos I</u> and <u>Belezos II</u>.

Defendants otherwise incorporate the Plaintiff's Complaint allegations within this memorandum and reference assertions of the Complaint as detailed more specifically below.

## **STANDARD OF REVIEW**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). A mere recital of the legal elements supported only by conclusory statements is not sufficient to state a cause of action. <u>*Id.*</u> at 555. The standard of review on a motion to dismiss calls for disregarding statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action. <u>Rodriguez-Ramos v. Hernandez-Gregorat</u>, 685 F.3d 34, 37 (1st Cir. 2012).

While the factual allegations of the Complaint are taken as true when evaluating a 12(b)(6) Motion, the Court may not accept legal conclusions in the complaint presented as if they were facts.

---

[6] Gardner Street, Cushing Street, Derby Street, Whiting Street, Pong Park Road, Main Street South Street, High Street, Bare Cove Park, Beal, Fort Hill, French Gardner, Grenadier, Martins, North, Ship, Spring, Water, and West. (Compl. at ¶¶ 37, 41, 102, 103, 105, 108, 111).

See <u>Schaer v. Brandeis Univ.</u>, 432 Mass. 474, 477 (2000). If, however, the face of the complaint and its incorporated materials, such as appendices or exhibits, conclusively demonstrate an affirmative defense, dismissal is appropriate. <u>State Room, Inc. v. MA-60 State Assocs., L.L.C.</u>, 84 Mass. App. Ct. 244, 248 (2013). Dismissal in reliance on exhibits attached to a complaint can occur under the Rule 12(b)(6) standard; conversion to a motion for summary judgment is not required. See <u>Golchin v. Liberty Mut. Ins. Co.</u>, 460 Mass. 222, 224 (2011) ("where . . . the plaintiff had notice of the extrinsic documents and relied on them in framing the complaint, the attachment of such documents to a motion to dismiss does not convert the motion to one for summary judgment") (citations and quotations omitted). <u>See</u> <u>Mmoe v. Commonwealth</u>, 393 Mass. 617, 620 (1985); <u>Beddall v. State Street Bank & Trust Co.</u>, 137 F.3d 12, 17 (1st Cir. 1998) (while ordinarily consideration of a 12(b)(6) motion must be limited to allegations in the complaint, where complaint's factual allegations are linked and dependent upon a document, that document effectively merges into the pleadings and the trial court may review it in deciding the motion to dismiss).

The principals of *res judicata* – issue and claim preclusion – also factor into the motion to dismiss and apply to bar a plaintiff from relitigating claims and issues that were determined in previous suits. <u>Airframe Sys. v. Raytheon Co.</u>, 601 F.3d 9, 14 (1st Cir. 2010). A plaintiff cannot use the 12(b)(6) standard of accepting well-pled facts as true as a means of circumventing earlier determinations rendered against him. <u>Id.</u>

Federal claim preclusion law applies to determine the preclusive effect to be given a prior federal court judgment. <u>See</u> <u>Coors Brewing Co. v. Mendez-Torres</u>, 562 F.3d 3, 8 (1st Cir. 2009). Federal claim preclusion law bars parties from relitigating claims that could have been made in an earlier suit, not just claims that were actually made. <u>See</u> <u>Federated Dep't Stores, Inc. v. Moitie</u>, 452 U.S. 394, 398, 101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981).

The doctrine of claim preclusion serves at least two important interests: protecting litigants against gamesmanship and the added litigation costs of claim-splitting, and preventing scarce judicial resources from being squandered in unnecessary litigation. See Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 329 (1st Cir. 2009). Those interests are especially implicated in a case like this, where the plaintiff had every opportunity to fully litigate his various claims against the full range of defendants in an earlier suit and made the strategic choice not to do so. Plaintiffs cannot obtain a *fifth* chance at a different outcome by bringing related claims against the same or closely related defendants at a later date based on the same set of facts and circumstances.

## CLAIM AND ISSUE PRECLUSION

Claim preclusion applies if (1) the earlier suit resulted in a final judgment on the merits, (2) the causes of action asserted in the earlier and later suits are sufficiently identical or related, and (3) the parties in the two suits are sufficiently identical or closely related. See id.; Negron-Fuentes v. UPS Supply Chain Solutions, Inc., 532 F.3d 1, 10-11 (1st Cir. 2008); Apparel Art Int'l v. Amertex Enters., 48 F.3d 576, 583-84 (1st Cir. 1995).

Issue preclusion serves as a bar for issues that were actually litigated and decided in the first litigation. Klimowicz v. Deutsche Bank Nat'l Trust Co., 264 F. Supp. 3d 309, 316-317 (D. Mass. 2017). It bars relitigation of issues even in the context of a suit that is based on an entirely different claim. Id.

Massachusetts applies the doctrine of issue preclusion in a traditional manner. The Supreme Judicial Court has stated that issue preclusion applies when:

(1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current

adjudication. Additionally the issue decided in the prior adjudication must have been essential to the earlier judgment.

Massachusetts courts also require that appellate review must have been available in the earlier case before issue preclusion will arise.  In re Sonus Networks, Inc, S'holder Derivative Litig., 499 F.3d 47, 56-57 (1st Cir. 2007).

Both claim and issue preclusion apply as a bar in this case, as is more fully discussed below.

## FEDERAL AND STATE FALSE CLAIMS ACTS

Liability pursuant to the **Federal False Claims Act** ("FFCA") counts alleged in Plaintiff's Complaint applies to any person who –

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

> (C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);

31 U.S.C.S. § 3729.

Any such person is liable to the United States Government for a civil penalty between $5,000 and $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person.  31 U.S.C.S. § 3729.

Liability pursuant to the Massachusetts False Claims Act ("MFCA") counts alleged in Plaintiff's Complaint applies to any person who –

> (1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

> (2) knowingly makes, uses or causes to be made or used a false record or statement material to a false or fraudulent claim;

> (3) conspires to commit a violation of this subsection;

G.L. c. 12, § 5B(a).  Such person shall be liable to the commonwealth or political subdivision for a civil penalty of at least $5,500 and at most $11,000 per violation, plus 3 times the amount of damages, including consequential damages, that the commonwealth or a political subdivision thereof sustains because of such violation.  Id.

## PLAINTIFF'S CLAIMS FOR RELIEF

| | |
|---|---|
| COUNT I | False Claims Act, 31 U.S.C. § 3729(a)(1)(A) |
| COUNT II | False Claims Act, 31 U.S.C. § 3729(a)(1)(B) |
| COUNT III | False Claims Act, 31 U.S.C. § 3729(a)(1)(C) |
| COUNT IV | Massachusetts False Claims Act, G.L. c. 12, § 5B(a)(1) |
| COUNT V | Massachusetts False Claims Act, G.L. c. 12, § 5B(a)(2) |
| COUNT VI | Massachusetts False Claims Act, G.L. c. 12, § 5B(a)(3) |

## ARGUMENT

In the subsections below, Defendants address why the Plaintiff's claims fail on the merits. Included within this section is a discussion of why Plaintiff's claims are (I.A.) barred by the doctrine of claim preclusion; (I. B.) defeated by the doctrine of issue preclusion; and (I.C.), notwithstanding the doctrine of *res judicata*, fail on their merits.

Beyond these reasons for dismissal, Defendants address (II.) that Plaintiff's claims have statute of limitations issues, (III.) issues involving the matter of Massachusetts ex rel. Powell v. Holmes, Civil Action No. 18-11336-FDS, 2022 U.S. Dist. LEXIS 101266 (D. Mass. June 7, 2022), (IV.) issues with the FFCA and MFCA's publicly disclosed information bar, and, finally, (V.) the suit impleads individual defendants in their individual capacities without making a single allegation against any of them in their individual capacities.

## I.       ALL OF PLAINTIFF'S CLAIMS FAIL ON THEIR MERITS

### A.  *The Plaintiff's Allegations Do* Not *Show That The Defendants Submitted Claims To The Federal Or State Government Based Upon Materially False Information*

The Plaintiff's claims do not fall within the scope of either False Claims Act. "[M]erely alleging facts related to a defendant's alleged misconduct is not enough . . . . Rather, a [Federal FCA complaint] must 'sufficiently establish that false claims were submitted for government payment' as a result of defendant's alleged misconduct.'" United States ex rel. Ge v. Takeda Pharm. Co. Ltd., 737 F.3d 116, 124 (1st Cir. 2013) (quoting Rost, 507 F.3d at 732-33); see United States ex rel. Booker v. Pfizer, Inc., 847 F.3d 52, 57 (1st Cir. 2017) ("That is, even when a relator can prove that a defendant engaged in 'fraudulent conduct affecting the government, FCA liability attaches only if that conduct resulted in the filing of a false claim for payment from the government.'" (quoting Rost, 507 F.3d at 727)). FCA claims typically arise in the context of a scheme to defraud the government. See e.g. United States ex rel. Kneepkins v. Gambro Healthcare, Inc., 115 F. Supp. 2d 35, 37 (D. Mass. 2000)(alleged that defendants performed unnecessary and wasteful blood tests for purposes of submitting Medicare reimbursements in violation of the False Claims Act).

The Massachusetts FCA imposes liability upon "[a]ny person who (1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (2) knowingly makes, uses or causes to be made or used a false record or statement material to a false or fraudulent claim." G.L.c. 12, §5B(a). The word "claim" is defined to include a request for payment to a contractor, if the payment will advance a program or interest of, and ultimately come in whole or in part from, the Commonwealth or a political subdivision. G.L.c. 12, §5A. In § 5B(a), the word "knowingly" modifies all that follows.

The MFCA similarly contains a materiality requirement. Commonwealth ex rel. Minarik v. Tresca Bros. Concrete, Sand & Gravel, Inc., Nos. 145714, 1784CV02608-BLS2, 2021 Mass. Super. LEXIS 5, at *6 (Jan. 25, 2021). The statute defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." G.L.c. 12,

§5A; cf. " United States ex rel. Loughren v. Unum Grp., 613 F.3d 300, 307 (1st Cir. 2010) (same under FFCA).

Plaintiff alleges that the Defendants claims for Chapter 90 reimbursements fall within the scope of the act because, according to his theory, the speed signs were not posted in accordance with the law. He is precluded from making that argument.

### 1. Claim Preclusion

The Plaintiff has litigated and lost his claim that the signs were not posted in accordance with the law, multiple times.

Claim preclusion applies if (1) the earlier suit resulted in a final judgment on the merits, (2) the causes of action asserted in the earlier and later suits are sufficiently identical or related, and (3) the parties in the two suits are sufficiently identical or closely related. See id.; Negron-Fuentes v. UPS Supply Chain Solutions, Inc., 532 F.3d 1, 10-11 (1st Cir. 2008); Apparel Art Int'l v. Amertex Enters., 48 F.3d 576, 583-84 (1st Cir. 1995).

Claim preclusion also applies to bar relitigation of claims that could have been made in an earlier suit, not just claims that were actually made. See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398, 101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981).

In deciding Zotos I, Judge Dein summarized the Plaintiff's theory as follows:

Each of the citations that Zotos received was issued pursuant to a speed limit posted under Section 18 of the Massachusetts speed laws. (See Compl. ¶¶ 27, 31, 37). Therefore, Zotos claims that in order to be enforceable, the posted speed limits had to have been established in accordance with regulatory procedures adopted by the DOT, and certified by both the DOT and the registrar of motor vehicles. (See id. ¶¶ 21-22, 26, 33). However, during his investigation into Hingham's traffic enforcement practices, Zotos allegedly obtained correspondence from state and local employees indicating that no speed study had ever been completed for Gardner Street in Hingham, where Zotos was driving when he received his

third citation, and that no Special Speed Regulations had ever been issued for Gardner Street or for the portion of Charles Street where Zotos was driving when he received his second citation. (See id. ¶¶ 39-40, 45-46). Accordingly, Zotos claims that the speed limits under which he was cited were posted illegally and are unenforceable.

…

The crux of Zotos's complaint is that the Town, as well as a number of its officials and members of its police force, have engaged in a long-standing and wide-spread practice of posting and enforcing unreasonably low speed limits, in violation of the Town's regulatory authority, in order to ensnare unsuspecting motorists in "Speed Traps." (See Compl. at Introduction). Thus, although Zotos is again challenging the posting and enforcement of the speed limit sign on Gardner Street in Hingham, he claims that this conduct was part of a broader, fraudulent traffic enforcement scheme in which the defendants knowingly erected speed limit signs, in violation of Section 18, and improperly issued CMVIs for speeding in excess of the unlawfully posted limits. (See, e.g., id. ¶¶ 26, 33, 35, 49-58). According to Zotos, the defendants carried out this alleged scheme because they believed that "drivers simply go too fast," and because they feared that the State authorities charged with approving the posting of speed limits might raise, rather than reduce, the limits if the Town were to pursue the regulatory approval process. (Id. ¶¶ 30, 33, 36, 74, 99).

(Exhibit B at pp. 7 of 38, 12 of 38).

In fact, as referenced within Judge Dein's decision, the Plaintiff's challenge to the lawfulness of the posted speed signs began in the Hingham District Court in his challenge to a speeding citation he received on Gardner Street in Hingham. Judge Dein summarized the Plaintiff's Hingham District Court Appellate Division challenge as follows:

The plaintiff appealed the April 8, 2011 judgment of the Hingham District Court to the Appellate Division of the District Court, claiming that "[t]he trial judge committed an error of law, when he held the appellant responsible for exceeding a posted speed limit in violation of M.G.L. c. 90. § 18, where the uncontroverted evidence showed the sign had been unlawfully erected in violation of the express requirements of M.G.L. c. 90, § 18[.]" (Pl. Ex. 2). On June 20, 2011, the Appellate Division ruled that Zotos had failed to establish an error of law. (Pl. Ex. 4). Accordingly, it upheld the hearing judge's finding that the plaintiff was "responsible" for the CMVI of speeding. (Id.).

Thereafter, Zotos filed an appeal with the Massachusetts Appeals Court. (Pl. Ex. 6). In connection with his appeal, Zotos again argued that he could not be held responsible for speeding on Gardner Street in Hingham because the speed limit had not been properly posted pursuant to Section 18 of the Massachusetts speed laws. (Id. at 9-12). **In particular,**

> **he claimed that the speed limit sign had been erected "ultra vires, and was therefore legally unenforceable." (Id. at 43).** He thus contended that the Hingham District Court judge had erred by finding him responsible for speeding, and that the finding should be vacated. (Id. at 12).

(Exhibit B at pp. 9 of 38)(emphasis added).  The Hingham District Court Appellate Division rejected his arguments and found him responsible to pay the citation.  (Id.).  The Plaintiff appealed to the Massachusetts Appeals Court, which affirmed the Hingham District Court Appellate Division's Judgment.  (Id. at pp. 11 of 38).  He also petitioned the SJC for further appellate review which was denied.  (Id.).

In dismissing the Zotos I Complaint in its entirety, Judge Dein also ruled on Plaintiff's claims for misrepresentation.  In Zotos I, Plaintiff brought claims for fraudulent and negligent misrepresentation, set forth in Counts XII and XIII of the Zotos I complaint which were based on an alleged misrepresentation that the speed limit signs were valid when they were not.  (Exhibit B at pp. 36 of 38).  Regarding these claims, Judge Dein ruled as follows:

> In order to state a claim for fraudulent misrepresentation, the plaintiff must allege "that the defendants made a false representation of material fact, with knowledge of its falsity, for the purpose of inducing the plaintiff[ ] to act on this representation, that the plaintiff[ ] reasonably relied on the representation as true, and that [the plaintiff] acted upon it to [his] damage." Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc., 455 Mass. 458, 471, 918 N.E.2d 36, 47 (2009) Similarly, in order to support a claim for negligent misrepresentation, the plaintiff must allege facts showing that the defendant supplied false information to others "without exercising reasonable care or competence in obtaining or communicating the information, that those others justifiably relied on the information, and that they suffered pecuniary loss caused by their justifiable reliance upon the information." Id. at 471-72, 918 N.E.2d at 47-48 (quotations omitted).
>
> This court finds that Zotos' complaint does not support a plausible claim under either theory because the plaintiff has not alleged sufficient facts to show that the defendants made a false representation of a material fact. Zotos' claims for both fraudulent and negligent misrepresentation stem from the June 25, 2009 incident on Charles Street. (See Pl. Opp. Mem. at 19; Compl. ¶¶ 31-32, 121-22, 125-26). According to the plaintiff, the posted speed limit on that street was 30 m.p.h., and he was issued a citation for driving in excess of 30 m.p.h. (Compl. ¶ 31). Thus, even if the defendants failed to follow the procedures required

for posting the sign, the information that they provided to the public about the acceptable speed on Charles Street was accurate. Therefore, Zotos' allegations show that there was no misrepresentation, and the defendants' motion to dismiss is allowed with respect to Counts XII and XIII.

(Exhibit B at pp. 36-37). The First Circuit Affirmed the Judgment. (Exhibit C).

If Zotos I were the only prior action claim preclusion would apply to bar Plaintiff's instant claims. He alleged that the speed signs were not posted in accordance with the law and specifically brought two claims for fraudulent and negligent misrepresentation upon the same theory of liability that he presents to this Court through his current FFCA and MFCA claims. Except, as detailed above, Zotos I is not the only case that applies to bar his current claims, Plaintiff brought serial litigation on the same subject matter in this Court when he filed Zotos II.

In Zotos II, Plaintiff brought many of the same claims as he brought in Zotos I and he also added counts for *ultra vires*, claiming (detailed more fully above) that Defendants acted ultra vires because Defendants erected and enforced special speeding regulations pursuant to Mass. Gen. L. c. 90, § 18 without complying with section 18's requirements. (Exhibit E). Importantly, Judge Casper ruled:

> Without pointing to any supportive authority, Zotos argues that, because the speed limits at issue were posted, they must be treated as special speed limits pursuant to section 18. D. 21 at 17. In Zotos' view, "'general speed regulations' set forth by [section § 17] are all unposted speed limits." Id. The Court finds no language in section 17 that automatically places a speed limit outside of section 17's purview and renders it subject to section 18's special requirements merely because a public sign has been posted. To the contrary, in section 17 the language "[u]nless a way is otherwise posted in accordance with the provisions of section eighteen," particularly the use of "otherwise," indicates that section 18 is not the exclusive authority for posted speed limits. Mass. Gen. L. c. 90, § 17. Moreover, the fact that the citations may have listed section 18 is not determinative because "[Zotos] suffered no prejudice" given that "[r]egardless of the section checked, whether § 17 or § 18, the Commonwealth had the same burden of proof, to wit, proving operation of the car in excess of that which was reasonable and proper." Police Dep't of Hingham, 81 Mass. App. Ct. at *2. Because Zotos has failed to present a plausible basis upon which to conclude that the

speed limits signs at issue were outside of the reach of section 17 and its "reasonable and proper" standard, Zotos has failed to allege that Defendants' conduct was ultra vires. Therefore the ultra vires claims fail.

(Exhibit E).

If Zotos I and II were the only prior actions, claim preclusion would apply to bar Plaintiff's instant claims, except, as detailed above, Plaintiff continued to press his theories in Belezos v. Town of Hingham filed in Plymouth Superior Court. There is clearly privity between the Plaintiff and Mr. Belezos in these circumstances. Cruickshank v. MAPFRE U.S.A., 94 Mass. App. Ct. 662, 665 (2019)("The examination essentially reduces itself to an inquiry whether the party against whom preclusion is asserted participated in the prior proceeding, either himself or by a representative.").

The insufficiency of Plaintiff's theories was highlighted for a third time by Superior Court Judge Christopher Muse in Belezos I when the court found the following:

> **The core issue raised again by Zotos, now on behalf of Belezos, is: Did Hingham have the right to install that sign, and did the Hingham police have the authority to enforce a speed limit on Gardner St? For the benefit of Belezos and for posterity, the court shall echo the historic findings made earlier against Zotos, and now states without equivocation, "Yes, they did."**

(Exhibit G)(emphasis added).

Plaintiff did not relent in his attempt to prove that the Defendants unlawfully posted speed signs within the Town of Hingham, he filed another serial action in Belezos II in this Court. (Exhibit I). As detailed above, fully applying the principles of claim preclusion, Magistrate Judge Bowler determined:

> Simply put, the MAC did not pass over [the claims regarding the erection and enforcement of the unauthorized speed limit signs.].

> In any event, the trial court considered the issues regarding the unauthorized speed limit signs and made necessary findings regarding them to support the final judgment. As previously explained, the trial court did not render alternative findings and the MAC did not affirm the judgment based on one of two alternative grounds. (Docket Entry # 22, p. 28).

(Exhibit J at pp. 24).

Unsuccessful in each of his *four* prior civil actions and his Chapter 90 CMVI appeal, he now attempts to bring six claims for relief under the Federal and State False Claims act and makes allegations which do not simply disregard the prior litigation but that are directly contrary to the each of the prior final decisions reflecting the lack of merits of his claims. The Defendants posting of speed signs within the Town was deemed lawful in each of the five prior cases. He cannot legitimately allege that the Defendants engaged in a knowing violation of the law when multiple courts of competent jurisdiction ruled to the contrary. Indeed, the core claim upon which all six current counts are based has been repeatedly and consistently rejected and he is barred from attempting to relitigate the same claims through the FFCA and MFCA causes of action, particularly where they are essentially the same claims as he made in his fraudulent and negligent misrepresentation, and *ultra vires* claims in each of the prior actions.

Further, Plaintiff is a duly licensed attorney at law. He could have very clearly brought his False Claims counts for relief in any one of his prior actions. For these reasons, claim preclusion applies to bar all of Plaintiff's current claims and his Complaint must be dismissed in its entirety.

## 2. Issue Preclusion

As indicated above, Massachusetts law reflects the federal standard for issue preclusion. See Global NAPS Inc. v. Verizon New Eng. Inc., 603 F.3d 71, 95 (1st Cir. 2010); TLT Constr. Corp. v. A. Anthony Tappe & Assocs., 716 N.E.2d 1044, 1049 (Mass. App. Ct. 1999). This doctrine "prevents re-litigation of an issue determined in an earlier action where the same issue arises in a later action" even if that issue arose as part of a different claim. TLT, 716 N.E.2d at 1049 (emphasis added, internal quotations omitted). The elements the moving party must prove are: "(1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom estoppel is

asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication is identical to the issue in the current adjudication." <u>Id.</u> There is a fourth requirement under both Massachusetts and federal law requiring the moving party to prove that "the issue decided in the prior adjudication" was "essential to the earlier judgment." <u>See</u> <u>Comm'r of the Dep't of Employment and Training v. Dugan</u>, 697 N.E.2d 533, 536 (Mass. 1998); <u>see also</u> <u>Global NAPS,</u> 706 F.3d at 95.

There was a final judgment on the merits in <u>Zotos I</u>, <u>Zotos II</u>, <u>Belezos I</u>, and <u>Belezos II</u>. There was also a final judgment against Plaintiff in his Chapter 90 appeal. <u>H</u><u>ingham Police Dep't v. Zotos</u>, 81 Mass. App. Ct. 1136 (2012) <u>review denied by</u> <u>Police Dep't of Hingham v. Zotos</u>, 463 Mass. 1106, 973 N.E.2d 1269, 2012 Mass. LEXIS 873 (Sept. 7, 2012). The Plaintiff was either a party to the prior litigation or the attorney for Nicholas Belezos, a person with whom he was clearly in privity with in the <u>Belezos I</u> and <u>Belezos II</u> matters. The issue in the prior litigation – whether the speed signs in the Town of Hingham were posted *ultra vires* – is the same key issue as Plaintiff makes in this litigation.

Plaintiff is barred from re-litigating the issue of whether the speed signs in the Town of Hingham were posted *ultra vires*.

### 3. Even If The Prior Suits Do Not Serve As A Litigation Bar, Plaintiff's FFCA And MFCA Claims Still Fail

Plaintiff brings three counts for alleged violations of the Federal False Claims Act based upon subsections (1)(A), (1)(B), and (1)(C), which state as follows:

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);

31 U.S.C.S. § 3729.

Plaintiff brings three counts for alleged violations of the Massachusetts False Claims Act based upon subsections (a)(1), (a)(2), and (a)(3), which state as follows:

Liability pursuant to the Massachusetts False Claims Act applies to any person who –

(1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses or causes to be made or used a false record or statement material to a false or fraudulent claim;

(3) conspires to commit a violation of this subsection;

G.L. c. 12, § 5B(a). As discussed above, both the FFCA and MFCA contain a materiality requirement.

Quite clearly, Plaintiff's claims fail on all elements. Even if we assume, *arguendo*, that the prior suits do not serve as a litigation bar, they still serve to show that the Plaintiff cannot show that the Defendants *knowingly* presented, or caused to be presented, a false or fraudulent claim for payment or approval because they submitted Chapter 90 Reimbursement requests knowing that the speed signs were not in compliance with the law. Notwithstanding the fact that he is barred from making such a claim, the decisions still stand to indicate that the lawfulness of the speed signs were reviewed five times over and in each prior suit the court rendered a decision upholding the lawfulness of the signs and rejecting the Plaintiff's claims. See 31 U.S.C.S. 3729(A)(1); see also G.L. c. 12, § 5B(a). In these circumstances, Plaintiff cannot show that the Defendants *knowingly* made, caused to be made or used a false record or statement material to a false or fraudulent claim (See 31 U.S.C.S. 3729(A)(2); see also G.L. c. 12, § 5B(b)) by submitted Chapter 90 Reimbursement requests with the following affirmation:

I/W e under penalty of perjury that the forms as listed or summarized on the attached forms were examined; that they are in conformity with our existing wage schedule, equipment rates, and all applicable statutes and regulations; that they are properly chargeable to the appropriation(s) designated for this work; and that Executive Order No. 195, dated April 27, 1981 [and Chapter 11, Section 12 (2012)], is acknowledged as applicable.

(Compl. at ¶¶ 48-49).

As discussed above, the FFCA and MFCA require that the Defendants knowingly submitted fraudulent claims, a proof requirement which is entirely unsupported by the pleadings. Beyond the extensive history which requires we draw the contrary conclusion, Plaintiff simply does not allege that the Defendants submitted reimbursement requests knowing them to be materially false or fraudulent. He infers through his claims that this is the case but that is not sufficient under the caselaw. Claims of fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which provides: "[A]ll averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 226 (1st Cir. 2004). The allegations of knowingly submitting a false or fraudulent claim must be pled with particularity. United States ex rel. Kelly v. Novartis Pharm. Corp., 827 F.3d 5, 14 (1st Cir. 2016). It is not enough for Plaintiff to suggest by inference that the FFCA or MFCA was violated because the speed signs were alleged posted unlawfully and one of the affirmations to an otherwise fully lawful Chapter 90 reimbursement request contained the above quoted phrase. Plaintiff is required to allege that the Defendant *knowingly* submitted a *materially false* or *fraudulent* claim for reimbursement which *defrauded* the state and federal government. He falls far short of doing so.

Plaintiff cannot show a violation of the FFCA or the MFCA and, for the same reasons, he cannot show a conspiracy to violate the FFCA or MFCA.

## II.    ZOTOS' CLAIMS ARE BARRED BY THE STATUTES OF LIMITATION

A civil action under section 3730 [31 USCS § 3730] may not be brought more than six years after the date on which the violation of section 3729 [31 USCS § 3729] is committed.  31 U.S.C.S. § 3731; see also United States v. Rivera, 55 F.3d 703, 706 (1st Cir. 1995). To the extent that the Court determines the Plaintiff has sufficiently alleged a violation of 31 U.S.C.S. § 3729, any such violation occurring prior to September 24, 2013 (six years prior to the filing of the instant Complaint), is barred by section 3730. Massachusetts applies the same six-year statute of limitation.  G.L. c. 12, § 5K.

Plaintiff's entire suit is premised upon unlawful posting of speed signs within the Town of Hingham.  He cannot argue around the fact that he first made these claims on July 9, 2012. Certainly, to the extent that each of the current claims are premised upon the same core alleged violation of the law, they should be dismissed as time barred.  Otherwise, any Chapter 90 Reimbursement Request certified prior to September 24, 2013 (i.e. Compl. at ¶¶ 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62) is time barred.

## III.    IF THE ATTORNEY GENERAL'S OFFICE MOVES TO DISMISS THIS CASE, EX REL POWELL V. HOLMES APPLIES

To the extent the Commonwealth of Massachusetts seeks to dismiss Plaintiff's Massachusetts False Claims counts for relief (Counts IV-VI), the Defendants repeat and incorporate fully herein the Commonwealth's motion and state that dismissal is required by Massachusetts ex rel. Powell v. Holmes, Civil Action No. 18-11336-FDS, 2022 U.S. Dist. LEXIS 101266 (D. Mass. June 7, 2022).

## IV.    PLAINTIFF'S SUIT IS BASED UPON PUBLICLY DISCLOSED INFORMATION

The public disclosure bar forecloses a qui tam action if substantially the same allegations or transactions as alleged in the action were publicly disclosed in a list of enumerated sources. 31 U.S.C.S. § 3730(e)(4)(A).

A plaintiff basing a False Claims Act, 31 U.S.C.S. §§ 3729-3733, qui tam claim in any part on publicly disclosed information must demonstrate that the plaintiff is an original source of that information. United States ex rel. Osheroff v. Humana, Inc., 776 F.3d 805, 807, 25 Fla. L. Weekly Fed. C 808 (11th Cir. 2015). Under the amended statute, the court must also analyze whether the complaint's allegations are "substantially the same" as the publicly disclosed allegations or transactions. 31 U.S.C.S. § 3730(e)(4) (2012). The bar is interposed even if the relator was a plaintiff in the prior litigation. State of Cal. ex rel. Standard Elevator Co., Inc. v. West Bay Bldrs., Inc., 197 Cal. App. 4th 963, 978 (2011); see also U.S. ex. rel. Poteet v. Medtronic, Inc., 552 F.3d 503 514-515 (6th Cir. 2009) (where the primary focus of the fraud allegations in a qui tam case were contained in a prior lawsuit, the qui tam action was "based on" public disclosures notwithstanding the additional detail provided about the fraud or the inclusion of different or additional defendants).

In United States ex rel. Schweizer v. Canon, Inc., No. H-16-0582, 2019 U.S. Dist. LEXIS 176583, at *25-26 (S.D. Tex. Aug. 14, 2019), the Plaintiff argued that she qualified as an original source because she was the source at the very center of a previously filed lawsuit that resulted in the public disclosure. The court rejected the relator's argument, stating "if accepted, [such an argument would] allow for the type of piggyback and/or parasitic lawsuits the public disclosure bar is meant to prevent." Id. citing 31 U.S.C.S. § 3730(e)(4)(B). The decision reaffirmed the rule that a qui tam case

cannot be based upon publicly disclosed information, even when the relator is the person who first publicly disclosed the allegations through a prior lawsuit.

Plaintiff's entire suit is based upon publicly disclosed information. It is based almost entirely upon the allegations of four prior actions (Zotos I, Zotos II, Belezos I and Belezos II). The information on which the current suit is based is substantially the same as the four prior actions. The core claim upon which the current suit is based – that the speed signs were posted *ultra vires* – is substantially the same as the four prior actions. Plaintiff simply does not qualify as an original source under the statute and, to the extent the suit is not dismissed on its lack of merits, the public disclosure bar applies to prevent the Plaintiff from proceeding with the current litigation.

### V. Plaintiff Has Named The Defendants Fernandez, Mayo, Alexiades, Paicos, And Nickerson In Their Individual Capacities But Makes No Allegations To Support Any Claims Against Them In Such A Capacity. All Allegations Are Made Against Them In Their Official Capacities.

When no facts are alleged showing that, apart from a defendant's official capacity actions on behalf of the municipal corporation, the defendant was acting in his individual capacity or personally participated in tortious conduct, dismissal of the defendants in their individual capacities is appropriate. See Heimlich v. Friedfertig, No. 07-P-817, 2008 Mass. App. Unpub. LEXIS 444, at *3 (App. Ct. Oct. 9, 2008)(dismissing corporate officer named in individual capacity where facts showed only official capacity conduct was complained of by plaintiff). The Plaintiff does not allege that any of the individual defendants acted for any individual gain or with a personal motive. The Plaintiff does not allege that any of the individual defendants received any personal benefit in any way or that any of them took any alleged action in any capacity other than their official capacity as Town employees, performing functions specifically related to their then or current job duties.

## CONCLUSION

WHEREFORE, Defendants the Town of Hingham, Roger Fernandez, Tom Mayo, Ted C. Alexiades, Kevin Paicos, and Susan Nickerson (collectively, the "Defendants"), respectfully requests that this Honorable Court GRANT their Motion to Dismiss and dismiss the action in its entirety.

DEFENDANTS TOWN OF HINGHAM,
MASSACHUSETTS, TOM MAYO, and
SUSAN NICKERSON
By their attorney:
*/s/ Kerry T. Ryan*
Kerry T. Ryan, BBO # 632615
Bogle, DeAscentis & Coughlin, P.C.
25 Foster Street, 1st Floor
Quincy, MA 02169
Phone: 617-845-5473
Fax: 617-481-4277
ktr@b-dlaw.com

DEFENDANTS ROGER FERNANDES,
TED C. ALEXIADES, and KEVIN PAICOS
By their attorney:
*/s/ Joseph A. Padolsky*
Douglas I. Louison, BBO # 545191
dlouison@lccplaw.com
Joseph A. Padolsky, BBO # 679725
jpadolsky@lccplaw.com
Louison, Costello, Condon & Pfaff, LLP
101 Summer St.
Boston, MA  02110
(617) 439-0305

## CERTIFICATE OF SERVICE

I, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants as listed below:

*/s/ Joseph A. Padolsky*
Joseph A. Padolsky

Dated: September 9, 2022