**United States District Court**
**District of Massachusetts**

```
───────────────────────────   )
                              )
UNITED STATES OF AMERICA and   )
COMMONWEALTH OF MASSACHUSETTS,  )
ex rel. FREDERIC P. ZOTOS,     )
                              )
          Plaintiffs,          )      Civil Action No.
                              )      19-12002-NMG
          v.                   )
                              )
TOWN OF HINGHAM et al.,        )
                              )
          Defendants.          )
                              )
───────────────────────────   )
```

**MEMORANDUM AND ORDER**

**GORTON, J.**

Frederic P. Zotos ("Zotos" or "Relator"), an attorney representing himself, brings this qui tam action on behalf of the United States of America and the Commonwealth of Massachusetts under the federal False Claims Act, 31 U.S.C. §§ 3729(a)(1)(A)-(C) ("the FCA"), and the Massachusetts False Claims Act, M.G.L. ch. 12, §§ 5B(a)(1)-(3) ("the MFCA").

Zotos alleges that the Town of Hingham ("the Town") and several of its administrators and officers (collectively, "the defendants") violated the FCA and MFCA by: 1) posting speed limit signs ultra vires; 2) knowingly submitting, or causing to be submitted, claims for payment which falsely represented that defendants had complied with all applicable laws and regulations; and thereby 3) fraudulently inducing the United

- 1 -

States and the Commonwealth to pay millions of dollars for highway and transportation projects.

Defendants have filed a joint motion to dismiss (Docket No. 21) which is currently pending before the Court.  For the following reasons, the motion will be allowed.

## I.  **Background**

### A.  **Prior Litigation**

Zotos has been the plaintiff in two previous actions brought in this Court against the Town and related defendants. See Zotos v. Town of Hingham, No. 12-11126-JGD, 2013 U.S. Dist. LEXIS 134123 (D. Mass. Sep. 19, 2013) ("Zotos I"); Zotos v. Town of Hingham, et al., No. 13-CV-13065-DJC, 2016 U.S. Dist. LEXIS 195835 (D. Mass. March 25, 2016) ("Zotos II").  In both of those cases, Zotos challenged the legitimacy of certain speed limit signs posted in the Town of Hingham.

In Zotos I, the district court published a lengthy decision dismissing the action and the First Circuit Court of Appeals ("the First Circuit") affirmed the dismissal. Zotos I, 2013 U.S. Dist. LEXIS 134123, aff'd, No. 13-2308 (1st Cir. 2015).  Zotos filed Zotos II prior to the First Circuit's decision in Zotos I and the district court issued a carefully crafted opinion dismissing that action as well. Zotos II, 2016 U.S. Dist. LEXIS 195835, at *14.

In addition to the lawsuits Zotos filed as a plaintiff, he has also served as an attorney in two other civil actions in which the plaintiff, Nicholas Belezos, alleged statutory and constitutional violations with respect to a speeding ticket issued by the Town.

In Belezos v. Board of Selectmen of the Town of Hingham, the Massachusetts Superior Court for Plymouth County allowed the defendants' motion for judgment on the pleadings which was then upheld on appeal by the Massachusetts Appeals Court on the grounds that plaintiff had waived his right to contest the infraction "at the heart of [the] dispute". Belezos v. Board of Selectmen of Hingham, 2017 Mass. App. Unpub. LEXIS 1005, at *3-4, 92 Mass. App. Ct. 1114 (Mass. App. Ct. 2017).  The Massachusetts Supreme Judicial Court denied plaintiff's application for further appellate review.

The same plaintiff, again represented by Zotos, brought substantially similar claims in federal court which, after the filing of a motion to dismiss and multiple motions for reconsideration, were dismissed by another session of this Court because they were barred by the doctrine of claim preclusion. See Belezos v. Board of Selectmen of Hingham, No. 17-12570-MBB, 2019 U.S. Dist. LEXIS 205938 (D. Mass. Nov. 27, 2019) ("Belozos II").

**B.   The Pending Case**

**1.   The Parties**

Relator Frederic Zotos is a licensed attorney residing in Cohasset, Massachusetts.  The Town of Hingham is a municipality located in Massachusetts.  The remaining defendants were all administrators and/or officers of the Town at times relevant to the complaint: Roger Fernandes was a Town Engineer, Thomas Mayo was a Town Administrator, Ted Alexiades was a Town Accountant/Finance Director and Town Administrator, Kevin Paicos was a Town Administrator and Susan Nickerson was a Town Accountant.

**2.   Speed Limit Signs**

The complaint includes a lengthy recitation of various federal and state laws and regulations pertaining to the establishment of speed limit signs.  In particular, the federal highway administrator has approved a 2009 Manual on Uniform Traffic Control Devices ("MUTCD") which sets standards for the establishment of speed limit signs and advisory speed plaques. According to other federal regulations, any permanent or temporary traffic control devices installed as part of a federal-aid project "shall conform to the MUTCD".  The federal highway administrator can withhold or withdraw funds for highway projects from states if they "violate[] or fail[] to comply with

the Federal laws or the regulations . . . with respect to a project".

Massachusetts has also enacted several statutes and regulations with respect to the establishment and maintenance of traffic signs. For instance, M.G.L. ch. 90, § 18 authorizes the special regulation of speed limits and the posting of such speed limit signs on roadways in Massachusetts. Pursuant to M.G.L. ch. 85, § 2, the Massachusetts Department of Transportation ("MassDOT") promulgates various regulatory standards about speed limits and signs. Those regulations require, inter alia, posted signage to comply with the MUTDC (as well as the Commonwealth's 2012 amendments to those standards), explain the kinds of statutory and special speed limits authorized under M.G.L. ch. 90, §§ 17 and 18, and set out procedures for posting new speed limit signs and advisory speed plaques.

Zotos avers that, as of March, 2012, the Town posted at least 26 speed limit signs without following applicable federal and state regulations for the establishment of those limits. Furthermore, Zotos alleges that, as of March, 2012, the Town posted multiple advisory speed plaques in violation of applicable regulations. He asserts that the Town has enforced such signs without authority and has ignored traffic studies and reports which indicate that the selected speed limits are improper.

### 3.  Chapter 90 Reimbursements

The complaint seeks to connect the Town's purportedly <u>ultra vires</u> posting of speed limit signs with certain funds provided by the federal government and/or the Commonwealth as part of highway and transportation aid programs.  The Commonwealth of Massachusetts ("the Commonwealth") provides funding for local transportation projects pursuant to M.G.L. ch. 90, § 34 ("Chapter 90").  Under Chapter 90, the Commonwealth reimburses municipalities and other qualifying entities for up to 100% of the cost of approved projects.

Zotos contends that the Town, in connection with a variety of Chapter 90 projects, entered into two contracts with the Commonwealth, submitted 24 separate Chapter 90 Reimbursement Forms to the District Office of the MassDOT's Highway Division and submitted several Chapter 90 Final Reports.  The complaint identifies certifications included in those contracts and reimbursement forms which defendants signed despite their alleged failure to comply with regulations pertaining to speed limit signs.

For instance, in 2007, the Town entered into a ten-year contract with the Massachusetts Highway Department related to its work on Chapter 90 projects in which it certified its current and continuing compliance with "all legal requirements governing performance of this Contract" whether or not such laws

or requirements were specifically cited.  In 2017, the Town executed a replacement contract in which it again certified that it would "comply with all applicable state laws and regulations".

Throughout the time period covered by those contracts, defendants submitted two dozen Chapter 90 Reimbursement Forms to the District Office of the MassDOT Highway Division.  Those reimbursement requests documented the Town's qualifying expenditures on previously approved Chapter 90 projects.  The requests also contained several certifications, namely: 1) a Municipal Highway Officer's Certification stating that costs were incurred "in conformance with the Massachusetts Highway Department Policies", 2) an Accounting Officer's Certification that the forms submitted by the Town conformed with "all applicable statutes and regulations" and 3) a Duly Authorized Municipal Official's Certification certifying the same.

Finally, the Town submitted multiple Chapter 90 Final Reports that each included a joint certification by the Municipal Highway Officer, Accounting Officer and Duly Authorized Municipal Official "that the Municipality has complied with all applicable statutes and regulations" while incurring the project costs for which it sought reimbursement.

In July, 2012, Zotos sent a letter to Richard Davey, the Secretary of Transportation and Chief Executive Officer of the

MassDOT.  Zotos requested that, _inter_ _alia_, the MassDOT withhold
or withdraw funds provided to the Town under Chapter 90 because
it had posted unauthorized speed limit signs.  He also asked
that the MassDOT dispatch personnel to Hingham to take down
those signs.  After the MassDOT rejected his request through its
General Counsel, Zotos wrote a second letter to the MassDOT
stating that he thought its response was inadequate.

According to the complaint, defendants have fraudulently
induced the Commonwealth to pay about $7.3 million of Chapter 90
funds to the Town by submitting reimbursement requests
containing false representations about their regulatory
compliance.

### 4.  Federal-Aid Highway Program Reimbursements

Zotos also avers that defendants caused the Commonwealth to
submit false claims to the Federal Highway Administration
("FHWA") with respect to projects administered under the
Federal-Aid Highway Program ("FAHP").  According to the
complaint, the federal government typically reimburses states
for FAHP projects as follows: 1) the FHWA notifies states about
the balance of available funds; 2) states make formal requests
and begin projects (_e.g._ by engaging various contractors to work
on those projects); 3) contractors work on the approved projects
and bill the states; 4) states, having incurred the cost of
paying such bills, send vouchers for payment to the FHWA; and 5)

the FHWA certifies those claims and submits them to the Treasury which disburses funds to the state.

Relator claims that states now submit vouchers for payment electronically through the Rapid Approval and State Payment System ("RASPS") which replaced a "legacy" system that used a specific form, FHWA Form PR-20.  He submits that Form PR-20 included a certification, to be signed by an authorized official of the state highway agency, stating that:

> [c]ost [sic] shown in this voucher have been incurred in accordance with terms of project agreements; applicable State and Federal laws or regulations; and that no claim has previously been submitted for costs claimed.

The complaint describes two FAHP projects that began in Hingham in 2018.  MassDOT/Federal-Aid Project No. 600518 was scheduled to begin in 2018 and be completed by 2020 ("Project No. 600518").  It was intended to improve several intersections, install a new traffic signal system and make other improvements for drivers, bicyclists and pedestrians.  MassDOT purportedly submitted 19 invoices, including 76 vouchers for payment, via RASPS for work done in connection with the project and received about $425,000 in funds from the federal government.

MassDOT/Federal-Aid Project No. 607309 was also scheduled to begin in 2018 and be completed by 2020 ("Project No. 607309" and, collectively with Project No. 600518, "the 2018 Hingham projects").  It was designed to address safety and capacity

issues at ramps by introducing additional traffic signals and making other improvements.  MassDOT is alleged to have submitted 45 invoices, including 221 vouchers for payment, via RASPS for work done in connection with the project and received about $2,885,000 in funds from the federal government.

In total, therefore, the complaint alleges that the MassDOT submitted, and received payment for, about $3.3 million in claims to the federal government for the 2018 Hingham projects.

## II.  **Motion to Dismiss**

### A.  **Legal Standard**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When rendering that determination, a court may consider certain categories of documents extrinsic to the complaint "without converting a motion to dismiss into a motion for summary judgment." Freeman v. Town of Hudson, 714 F.3d 29, 36

(1st Cir. 2013) (citing <u>Watterson</u> v. <u>Page</u>, 987 F.2d 1, 3 (1st
Cir. 1993)).  For instance, a court may consider documents of
undisputed authenticity, official public records, documents
central to a plaintiff's claim and documents that were
sufficiently referred to in the complaint. <u>Watterson</u>, 987 F.2d
at 3.

A court may not disregard properly pled factual allegations
in the complaint even if actual proof of those facts is
improbable. <u>Ocasio-Hernandez</u>, 640 F.3d at 12.  Rather, the
court's inquiry must focus on the reasonableness of the
inference of liability that the plaintiff is asking the court to
draw. <u>Id.</u> at 13.

**B.  Application**

**1.  Claim Preclusion and Issue Preclusion**

As an initial matter, defendants contend that the doctrines
of issue preclusion and claim preclusion bar Relator from
bringing this <u>qui tam</u> action.  They point to the extensive
litigation that Zotos has initiated or in which he has been
involved with respect to the Town's authority to post and
enforce speed limit signs.  According to defendants, state and
federal courts have repeatedly held that the Town did not post
such signs <u>ultra vires</u>.

The Court recognizes that claims similar to those asserted
by Zotos in this case have been heard and rejected by other

courts but it acknowledges Zotos' response that this case is different because he has filed it on behalf of the federal government and the Commonwealth as well as on his own behalf. Thus, the United States and the Commonwealth purportedly remain "real part[ies] in interest" with a viable financial stake in this action even though they have not intervened and are not parties. U.S. ex rel. Eisenstein v. City of New York, New York, 556 U.S. 928, 934-35 (2009). According to Zotos, the presence of those real governmental parties in interest prevents the application of claim and/or issue preclusion here.

Neither Relator nor defendants cite First Circuit caselaw in direct support of their respective positions. The Seventh Circuit Court of Appeals, however, has addressed a similar issue and held that

> the resolution of personal employment litigation does not preclude a *qui tam* action, in which the relator acts as a representative of the public. The special status of the United States counsels against reflexive transfer of rules of preclusion from private to public litigation.

United States ex rel. Lusby v. Rolls-Royce Corp., 570 F.3d 849, 852 (7th Cir. 2009); see also United States ex rel. Sorenson v. Wadsworth Bros. Constr. Co., 2019 U.S. Dist. LEXIS 95329, at *5-7 (D. Utah June 5, 2019) (holding that the presence of the federal government as a real party in interest in a qui tam action cannot "be ignored for purposes of collateral estoppel").

The Court finds, therefore, that neither claim nor issue preclusion bar this action.

### 2.   Federal and State False Claims Acts

Defendants next contend that Zotos has failed to plead a violation of the FCA or MFCA because he has not demonstrated the materiality of the alleged misrepresentations or the scienter of the defendants.  Defendants also suggest that Relator's claims are deficient under the heightened pleading requirements of Fed. R. Civ. P. 9(b).  For the reasons stated below, the Court concludes that Relator's claims are inadequate under both the FCA and the MFCA.

### a. Materiality

The United States Supreme Court has held that, in order to be actionable under the FCA,

> a misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision[.]

Universal Health Servs. v. United States ex rel. Escobar, 579 U.S. 176, 192 (2016) (Escobar I); see also U.S. ex rel. Loughren v. Unum Grp., 613 F.3d 300, 307 (1st Cir. 2010) (noting that the First Circuit has "long held that the FCA is subject" to a materiality requirement).

The MFCA also requires proof that an alleged misrepresentation was material to the government's decision. See Commonwealth ex rel. Minarik v. Tresca Bros. Concrete, Sand &

Gravel, Inc., 1784-CV-02608-BLS2, 2021 Mass. Super. LEXIS 5, at
*6 (Jan. 25, 2021); see also United States ex rel. Martino-
Fleming v. S. Bay Mental Health Centers, 540 F. Supp. 3d 103,
116, n.5 (D. Mass. May 19, 2021) (explaining that courts rely on
FCA caselaw to interpret the MFCA).

The materiality standard is "rigorous" and "demanding".
Escobar I, 579 U.S. at 192, 194.  The FCA is not:

> a vehicle for punishing garden-variety breaches of
> contract or regulatory violations.  A
> misrepresentation cannot be deemed material merely
> because the Government designates compliance with a
> particular statutory, regulatory, or contractual
> requirement as a condition of payment.  Nor is it
> sufficient for a finding of materiality that the
> Government would have the option to decline to pay if
> it knew of the defendant's noncompliance.

Id. at 194.

A misrepresentation about compliance with statutory,
regulatory or contractual requirements is material only if: 1)
it likely would be important to a reasonable recipient in
"determining his choice of action" or 2) if the defendant knew
it would actually be important to the choice of action of a
particular recipient. Escobar I, 579 U.S. at 193 (citation
omitted).  The First Circuit has held that the touchstone of
that inquiry is whether the misrepresentation "is sufficiently
important to influence the behavior of the recipient." United
States ex rel. Escobar v. Universal Health Servs., Inc., 842
F.3d 103, 110 (1st Cir. 2016) ("Escobar II") (citation omitted).

Courts assess the materiality of such a misrepresentation pursuant to a holistic analysis that includes three primary factors, none of which is dispositive: 1) whether the government expressly identified compliance with particular requirements as a condition of payment, 2) whether the government nevertheless paid a claim despite knowing that those requirements were violated and 3) whether the noncompliance in question is "minor and insubstantial" or goes to "the very essence of the bargain". See Escobar I, 579 U.S. at 193-195, 193 n.5.

In this case, Relator alleges that defendants certified (or caused to be certified) their compliance with all applicable laws and regulations in connection with certain contracts and reimbursement forms despite their failure to comply with regulations pertaining to the establishment and maintenance of speed limit signs in the Town of Hingham.  He asserts that compliance, or lack thereof, with regulations is "the textbook example" of a material misrepresentation.  Zotos concludes that it is "hard to imagine" that the federal government would have paid the Commonwealth, or that the Commonwealth would have paid the Town, but for the purportedly misleading certifications.

According to Relator, there is an actionable misrepresentation in this case because: 1) defendants did not comply with certain regulations, 2) they nevertheless submitted broad certifications which attested to their compliance with all

applicable regulations and 3) those certifications were a prerequisite to the payment of funds.  That expansive framing of materiality, however, has been specifically rejected by the United States Supreme Court:

> [I]f the Government required contractors to aver their compliance with the entire U.S. Code and Code of Federal Regulations, then under this view, failing to mention noncompliance with any of those requirements would always be material.  The False Claims Act does not adopt such an extraordinarily expansive view of liability.

Id. at 196.

In evaluating the materiality of defendants' alleged misrepresentations in the case at bar, therefore, the Court rejects Relator's expansive and conclusory theory of liability and instead considers the alleged misrepresentations under the holistic analysis established by the Supreme Court in Escobar I.

### i.  Contracts and Reimbursement Requests Related to the Commonwealth's Program

As described above, Zotos asserts that defendants made material misrepresentations in contracts and reimbursement request forms that they submitted to the Commonwealth with respect to Chapter 90 projects.  Even assuming that the defendants posted unauthorized speed limit signs, *and* assuming that such misconduct was within the scope of the certifications at issue, the Court concludes that defendants' purported misrepresentations were not material.

- 16 -

Although the certifications submitted to the Commonwealth may have been a prerequisite for the Town receiving reimbursements, those certifications do not expressly identify any specific laws or regulations pertaining to speed limit signs.  And even if particular provisions had been expressly identified, the alleged noncompliance of defendants was, in any event, "minor [and] insubstantial".  Escobar I, 579 U.S. at 194. The "essence of the bargain" pursuant to which the Town received Chapter 90 funds was that the Town incurred costs in connection with actual work done on approved projects and that the Commonwealth reimbursed those costs.  Id. at 193, n.5.  The complaint does not allege that the Town failed to carry out the work or incur the costs for which it submitted reimbursement requests.

Furthermore, Zotos claims that he alerted the MassDOT about defendants' posting and maintenance of purportedly ultra vires speed limit signs in July, 2012.  The Commonwealth denied Relator's request to withhold funds from the Town and, in the aftermath of that correspondence, continued to appropriate Chapter 90 funding to the Town.  That funding in spite of defendants' alleged violations is "strong evidence" that the requirements were not material to the Commonwealth's decision-making.  Escobar I, 579 U.S. at 195.

This Court concludes that defendants' alleged misrepresentations to the Commonwealth about their compliance with regulations on speed limit signs were not therefore material under the holistic and demanding standard articulated in Escobar I.

### ii.  Invoices and Vouchers Related to the Federal-Aid Highway Program

A similar analysis applies to Relator's allegation that defendants caused the MassDOT to submit misleading invoices and vouchers to the federal government in connection with the 2018 Hingham projects.

It is unclear from the complaint whether the MassDOT actually submitted any signed copies of Form PR-20, including certifications, in connection with either of the 2018 Hingham projects.  To the contrary, Relator has merely alleged that Form PR-20 was used at some point, that the MassDOT submitted some vouchers for reimbursement to the federal government in connection with the 2018 Hingham projects (with or without Form PR-20) and that defendants' alleged misconduct would have rendered the certification on Form PR-20 false.

That juxtaposition of defendants' alleged misconduct, the certification included on Form PR-20 and the federal funding of the pertinent projects supports, at most, a speculative inference that defendants may have caused the MassDOT to submit

a false statement to the FHWA.  In <u>United States ex. rel. Kelly</u>
v. <u>Novartis Pharms. Corp.</u>, the First Circuit explained that
"evidence and arguments [which] proceed more by insinuation" are
too speculative to support a claim that defendants caused a
third-party to submit false claims. 827 F.3d 5, 14-15 (1st Cir.
2016) (citing <u>United States ex rel. Rost</u> v. <u>Pfizer, Inc.</u>, 507
F.3d 720, 733 (1st Cir. 2007)).  Thus, the complaint here does
not allege defendants' purported fraud with the requisite level
of specificity. <u>Id.</u> at 13-14 (holding that allegations of
"illegal conduct alone" and/or "that a fraudulent claim was
presumably submitted" are insufficient).

Even if the complaint had adequately alleged that
defendants caused the MassDOT to submit misleading
certifications to the federal government, the purported
misrepresentations about defendants' compliance with speed limit
sign regulations would not be material.  First, there is no
express indication on Form PR-20 that compliance with
regulations related to the establishment of speed limit signs
was necessary for federal funding.  Furthermore, by 2018,
Relator had publicly initiated several lawsuits with respect to
defendants' alleged noncompliance but the federal government
nevertheless provided funding for the 2018 Hingham projects.

Finally, the "essence" of the FAHP funding bargain was that
the MassDOT incurred permissible costs on FAHP projects that

were duly reimbursed. <u>Escobar I</u>, 579 U.S. at 193 n.5.  There are no allegations in the complaint to suggest that work on approved projects was falsified or that duplicate costs were claimed. One cannot infer from the complaint that misrepresentations, if any, about defendants' compliance with regulations on speed limit signs were "sufficiently important" to affect the federal government's funding decisions about the 2018 Hingham projects. <u>Escobar II</u>, 842 F.3d at 110.

## ORDER

For the foregoing reasons, defendants' motion to dismiss (Docket No. 21) is **ALLOWED.**

**So ordered.**

         */s/ Nathaniel M. Gorton*
         Nathaniel M. Gorton
         United States District Judge

Dated:  July 21, 2023

- 20 -